IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02021-LTB-MJW


CAREY A. MURRAY,

Plaintiff,

v.

TASHA DOBBS,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 31)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This matter was referred to the undersigned pursuant to an Order of
Reference to United States Magistrate Judge issued by Judge Lewis T. Babcock
on January 5, 2010 (Docket No. 19).

The operative pleading is the pro se incarcerated plaintiff's Amended
Prisoner Complaint filed on December 9, 2009 (Docket No. 14). However,
pursuant to an Order to Dismiss in Part and to Draw Case to a District Judge and
to a Magistrate Judge issued by Senior Judge Zita Weinshienk on December 17,
2009 (Docket No. 17), the only remaining defendant in this action is Parole Officer

Tasha Dobbs, and only claims one through six remain. Judge Weinshienk noted in her Order that claims one through six "challenge the constitutionality of the sex offender classification and parole procedures used by the DOC [Department of Corrections]." (Docket No. 17 at 5).

The plaintiff's pleading is not a model of clarity, but he appears to assert the following. On February 4, 2008, the DOC abused its discretion by labeling him as a S-4D (sex offender in denial) pursuant to an administrative regulation, AR 750-02, Administrative Review of Unadjudicated Offenders. His sentence included two years of mandatory parole. He was paroled on February 25, 2009. The conditions of his parole did not include the requirement that he participate in the SOMB program. On February 27, 2009, however, defendant Colorado Parole Officer Dobbs compelled plaintiff to sign several documents and required him to take SOMB treatment. Due to the S-4D label, he was not allowed to live with his family while on parole and was forced to live in a homeless shelter. Dobbs asserted that she, the Colorado Board of Parole, and the Division of Adult Parole have the authority to enforce compliance for the plaintiff to take the SOMB treatment. Dobbs forced him to go to treatment at Behavioral Clinical Services (BCS) in Grand Junction, Colorado, even after plaintiff stated there was a conflict of interest at BCS from a prior period. Plaintiff was in full compliance with parole until around April 28, 2009. He was arrested on May 11, 2009, on a warrant for alleged parole violations. A no bond parole hold was placed on him. The parole complaint had approximately three technical violations and one for a pending new charge of felony escape from "ISP parole." Plaintiff claims that a person cannot escape from

parole.

In Claim One, plaintiff alleges "violation of the U.S. Constitution 8th and 14th Amendments. Due process, excessive bail, and cruel and unusual punishment." (Docket No. 14 at 6). There were several postponements of his parole revocation hearing due to the pending charges, and two of the postponements were done by defendant Dobbs. These postponements violated the Eighth Amendment and the Colorado Constitution because plaintiff could not be released from confinement without the no bond parole hold being vacated and because he was in "custody for over 180 days for the alleged parole technical violations that would only require 180 days of reincarceration for the plaintiff to serve if parole was violated." Finally, plaintiff asserts "[t]hat as of April 3, 2009 the new charges in the law pursuant to CRS § 18-1.3-405 will provide the authority that the Plaintiff as [sic] served his full amount of reincarceration, and is entitled to have his parole hold and complaint vacated to uphold this new law change." (Docket No. 14 at 6).

In Claim Two, plaintiff alleges "violation of the U.S. Constitution 1st and 14th Amendments, Art. IV § 2, Cl 1 Denial of Access to the Courts and Retaliation." (Docket No. 14 at 7). He made several attempts to access the courts between February 27 to April 28, 2009, but defendant Dobbs denied access to the courts due to the S-4D label despite being fully aware of plaintiff's pending cases since his first meeting with her on February 27, 2009. Plaintiff asserted the need to access a law library for research, either at Mesa State College or the public library. Plaintiff, however, was denied access to the Mesa State Reference Library during an office visit on March 10. On April 7, 2009, a case in Crowley County (08CV03)

was dismissed without prejudice. On March 26, 2009, a case in Jefferson County (08DR2543) was dismissed due to no response. A Colorado Court of Appeals case (08CA1715) was also hindered due to Dobbs' actions and was later dismissed.

In Claim Three, plaintiff alleges "violation of the U.S. Constitution Art. IV § 2 and 14th Amend. Family relations, Freedom to travel and Pursuit of Happiness." (Docket No. 14 at 8). Due to the S-4D label, he "has been denied the right to travel from place to place in the enjoyment of life and the pursuit of happiness." In addition, defendant Dobbs denied plaintiff internet access for a job hunt, denied access to the Colorado Workforce Center in Grand Junction, noting that plaintiff must call first and set an appointment, denied all travel on the streets and all access to the general public for employment and enjoyment purposes, denied him access to Whitman Park in Grand Junction where meals are served on Sundays, and allowed him to shop only at City Market on certain days during certain hours.

In Claim Four, plaintiff alleges "violation of the U.S. Const. 1st and 14th Amendments. Freedom of Religion and choice thereof." He was informed on February 21, 2009, that his residence was Lighthouse Gospel Ministries Homeless Shelter in Grand Junction. Plaintiff was forced to reside at that location and was told he could not live with his family due to the S-4D label. As a condition to live at that shelter, residents must follow their rules, including following a 7 p.m. curfew, listening to a religious speaker, attending two services on Sunday with no meal provided, taking showers every night, and paying a $2 daily fee.

In Claim Five, plaintiff asks the court to "review and interpretation of the

following writings for declaration of rights, legal relations, and whether ambiguity exists thereof under U.S. Constitution 14th Amendment Equal Protection." (Docket No. 14 at 10). On February 27, 2009, plaintiff was forced to sign several documents by defendant Dobbs or be forced to return back to prison. Dobbs stated she has the authority to send plaintiff back to prison and that plaintiff shall follow her directives at all times. Plaintiff "signed some of the documents as 'TDC' meaning (under Threats, Duress, and Coercion.)" (Docket No. 14 at 10). Some of the documents were to be used by the DOC, not the Colorado Parole Board or Officer. Plaintiff was forced to sign the Notice of Administration Review by the threatened coercion. Plaintiff cannot be compelled to sign any document nor can release be a condition of signing such document.

In Claim Six, plaintiff asks the court to review certain statements "for declaration of rights and legal relations of the right of Mandatory Parole under U.S. Constitution 14th Amendment Equal Protection." (Docket No. 14 at 11).

Plaintiff seeks the following relief:

The Plaintiff respectfully request this court for Declaratory Relief, separate point by point of each claim, showing the exact nature of the claimed constitutional violations. The Plaintiff request Declaratory Judgment and an Injunction for Claims One, Two, and three olny [sic]. That Claim four, five six and seven are to clear up any uncertainty or actual controversy between the parties that only an Declaratory Judgment can provide, whether or not further action could be sought. All claims have had an adverse affect on the Plaintiff's [sic] liberties and protected rights, these claims have the opportunity of reoccuring at anytime while the Plaintiff is on parole. That Declaratory Judgment is the proper relief at this time.

Therefore, the Plaintiff respectfull [sic] moves this Honorable Court to grant relief as requested and provide Declaratory Judgment separate for each claim. Further order any relief the Court deems equitable

and just for this action.

(Docket No. 14 at 14).  Plaintiff does not specify what injunctive relief he seeks.

The court notes that the plaintiff is currently incarcerated at Fremont Correctional

Facility.

Now before the court for a report and recommendation is defendant Dobb's

Motion to Dismiss (Docket No. 31).  She seeks dismissal of the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds:

(1) to the extent plaintiff challenges the validity of the "parole hold" and procedures

used during the parole revocation process, his sole federal remedy is a writ of

habeas corpus; (2) to the extent plaintiff seeks injunctive relief, defendant Dobbs is

without the authority to grant the requested relief; (3) to the extent the plaintiff

challenges the conditions set by the parole board upon his release onto parole, the

parole board is free to impose appropriate conditions of parole; (4) assuming,

*arguendo*, that plaintiff has a protected due process right in his S-4 classification,

he fails to establish that the procedures utilized were inadequate under the

circumstances; and (5) to the extent plaintiff asserts a First Amendment access to

courts claim, his claim fails.  Plaintiff filed a Response (Docket No. 33), and

defendant filed a Reply (Docket No. 36).  The court has carefully considered these

motion papers as well as the court's file and applicable Federal Rules of Civil

Procedure and case law.  The court now being fully informed, makes the following

findings, conclusions of law, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the

subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10ᵗʰ Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10ᵗʰ Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10ᵗʰ Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10ᵗʰ Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10ᵗʰ Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo.,

154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th

Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint

fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "A

complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead

'enough facts to state a claim to relief that is plausible on its face.'" Cutter v.

RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974)).

Since the plaintiff is proceeding without counsel, his pleadings have been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Timeliness of Defendant's Motion**

Plaintiff contends that the defendant's motion to dismiss should be denied because the defendant failed to answer the Amended Prisoner Complaint within 60 days after the request for waiver was sent. He notes that the waiver was delivered electronically on January 12, 2010, but the defendant's motion to dismiss was not filed until March 16, 2010, which he claims exceeded the 60-day time limit. Defendant, however, correctly asserts in her Reply that the motion to dismiss was timely filed. The waiver of service was executed on January 13, 2010 (Docket No. 22). Sixty days later would have fallen on Sunday, March 14, 2010. Therefore, defendant's filing of her motion to dismiss on the following business day, March 15, 2010 (Docket No. 31), not on March 16 as claimed by the plaintiff, was timely pursuant to Fed. R. Civ. P. 6(1)(1)(C) (". . . if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

**Claim One - Parole Revocation Process.**

In Claim One, plaintiff complains of the parole revocation and bail process, in particular several postponements of his parole revocation hearing due to pending charges. He indicates that two of the postponements were done by defendant Dobbs. He claims the postponements violated the Eighth Amendment and the Colorado Constitution because he could not be released from confinement without the no bond parole hold being vacated and because he was in "custody for over 180 days for the alleged parole technical violations that would only require

180 days of reincarceration for the plaintiff to serve if parole was violated."

In her motion to dismiss, defendant asserts that to the extent plaintiff challenges the validity of the "parole hold" and procedures used during the parole revocation process, his sole federal remedy is a writ of habeas corpus. Plaintiff responds that he

> is not challenging the validity of his confinement nor trying to shorten the duration of parole, which can be remedied under the writ of Habeas Corpus. . . . The Plaintiff is challenging the constitutionality of the rules and procedures that were set forth by the U.S. Supreme court under Morrissey and Wolff, that are not being observed by the Defendant. . . . Furthermore, the Defendant is not upholding Colorado state law concerning the parole revocation hearings that the General Assembly was fully aware of Morrisey and Wolff before enacting the following state statutes. See: CRS § 17-2-103.5(1)(c) A hearing relating to such revocation 'shall' be held, unless the board member is advised that a criminal charge is still pending and 'no' technical violations are alleged. . . (emphasis added) See: CRS § 17-2-103(7). . . . the hearing on revocation shall be held within a reasonable time, not to exceed thirty days after the parolee was arrested. . . (emphasis added). Therefore, the Plaintiff's complaint is proper under 42 USC § 1983 challenging the constitutionality of the procedures not being followed.

(Docket No. 33 at 2-3).

This court finds that plaintiff's recourse is not through a petition for a writ of habeas corpus as asserted by the defendant. Plaintiff appears to be raising constitutional violations based upon purported inaction by the Parole Board and the defendant (his parole officer) which allegedly resulted in his parole hearing being improperly delayed. Judgment in the plaintiff's favor on such a claim would not imply the invalidity of his conviction or sentence. See Rouse v. Colorado State Bd. of Parole, 2006 WL 1932666, *5 (D. Colo. July 11, 2006), aff'd, 242 Fed. Appx. 498 (10th Cir. July 9, 2007).

Nevertheless, plaintiff did receive his revocation hearing.  Inasmuch as he seeks only declaratory and injunctive relief, this court finds that the plaintiff now lacks a legally cognizable interest in the timeliness of the decision and the parole hold before that hearing.  Accordingly, it is recommended that the plaintiff's first claim for relief be dismissed as moot.  See Hernandez v. Brooks, 176 F.3d 488 (table) (unreported decision) (10th Cir. May 12, 1999) (The parole revocation hearing was already held, and the question of release pending the hearing was no longer live.  Thus, the case was moot.).  "Article III of the U.S. Constitution allows courts to adjudicate only 'live case[s] or controvers[ies]."  Schwartz v. Ploughe, 2010 WL 2269555, *3 (D. Colo. June 4, 2010) (quoting Burke v. Barnes, 479 U.S. 361, 363 (1987)).  "'When a favorable decision will not afford plaintiff relief,' the case is moot."  Id. (quoting McAlpine v. Thompson, 187 F.3d 1213, 1216 (10th Cir. 1999)).

**Claim Two - Denial of Access to the Courts.**.

In Claim Two, plaintiff claims that defendant Dobbs denied his request to go to a law library, and as a result, three cases were adversely impacted, namely, on April 7, 2009, a case in Crowley County (08CV03) was dismissed without prejudice; on March 26, 2009, a case in Jefferson County (08DR2543) was dismissed due to no response; and a Colorado Court of Appeals case (08CA1715) was also hindered due to Dobbs' actions and was later dismissed.  Defendant asserts that to the extent plaintiff asserts a First Amendment access to courts claim, his claim fails.

A plaintiff "claiming a denial of access to the courts must allege some actual

injury in his ability to pursue a nonfrivolous legal claim." <u>Redmon v. Zavaras</u>, 2010 WL 901341, *2 (D. Colo. Mar. 11, 2010) (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 349-55 (1996); <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1403 (10th Cir. 1996)).  Here, defendant has shown that the history of two of the cases cited by the plaintiff were dismissed because of other deficiencies.  In the first case, (08CV03), plaintiff was ordered to file an amended complaint within thirty days from December 10, 2009. (Def.'s Ex. A, p. 4).[1]  It was logistically impossible for the defendant to have hindered the plaintiff's compliance with that court-ordered deadline because defendant did not even meet with plaintiff for the first time until after the deadline expired.  In the second case (08DR2543), on March 6, 2009, after the plaintiff was released on parole, the court entered a minute order requiring that the matter be set for a hearing within 20 days or the case would be dismissed.  (Def.'s Ex. B at p. 3).  There is no indication, however, that the plaintiff informed the court of his new address as a result of being released on parole.  Because no party responded to the minute order, the case was dismissed on March 26, 2009.  (Def.'s Ex. B at p. 3).  Not having access to a law library would not have prevented the plaintiff from advising the court of his address change or from responding to the minute order.

Defendant does not specifically address the third claim allegedly impacted by the defendant's purported refusal to allow plaintiff to go to a law library. Nevertheless, this court recommends dismissal of Claim Two in its entirety

----

[1]When ruling on a 12(b)(6) motion to dismiss, the court may consider matters of which a court may take judicial notice, <u>see</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007), such as the state court dockets of the cases plaintiff references in his pleading.

because the claim is moot. Plaintiff seeks declaratory and injunctive relief with respect to this claim. Given the plaintiff's parole revocation, the court cannot mandatorily enjoin the defendant parole officer to permit law library access. Furthermore, "the entry of a declaratory judgment in [plaintiff's] favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendant['s] behavior towards him." Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997). "'[I]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.' . . . 'The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.'" Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1109-10 (10th Cir. 2010) (citations omitted). Here, a declaratory judgment on this claim would not affect defendant's behavior toward the plaintiff.

For the above reasons, it is recommended that Claim Two be dismissed.

**Claims Three and Four - Parole Conditions.**

In Claim Three, plaintiff complains about various restrictions placed upon him while he was on parole, namely, upon his travel to certain places, his internet access, his having to call a workforce center to make an appointment rather than being granted access to the center, and the time and location of where he could shop. Plaintiff seeks declaratory and injunctive relief on this claim. In Claim Four, plaintiff complains about not being permitted to live with his family, having to reside in a homeless shelter, and having to follow the conditions imposed upon him by

that shelter in order to reside there, namely, having to follow their rules, including a 7 p.m. curfew, listen to a religious speaker, attend two services on Sunday with no meal provided, take showers every night, and pay a $2 daily fee.  Plaintiff seeks declaratory relief only on this claim.

Defendant asserts that to the extent the plaintiff challenges the conditions set by the Parole Board upon his release onto parole, such conditions (including the requirement that plaintiff participate in sex offender treatment) are within the authority of the Parole Board and, therefore, plaintiff's challenges to those conditions should be dismissed.  (Docket No. 31 at 4-6) (citing, e.g., C.R.S. §§ 17-2-201(5)(f)(I) ("As a condition of every parole, the parolee shall sign a written agreement that contains such parole conditions as deemed appropriate by the board, which conditions shall include but need not be limited to the following: [listing conditions including] obey and cooperate with his or her community parole officer . . . That the parolee shall abide by any other condition the board may determine to be necessary . . ."),  17-22.5-403(8)(a) (". . . The conditions for parole for any such offender under this paragraph (a) shall be established pursuant to section 17-22.5-404 by the state board of parole . . . .")).

This court finds that the plaintiff has failed to state a claim upon which relief can be granted.  "Parolees do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special parole restrictions. . . .  These restrictions are designed to ensure rehabilitation and protect the public."  U.S. v. Lewis, 71 F.3d 358, 361 (1995) (quotations and citations omitted).  "A parolee who does not agree with the

conditions of his parole is free to refuse it." <u>Hampton v. Perez</u>, 2010 WL 1688464,

*4 (D. Colo. Apr. 23, 2010) (citations omitted). "Because parole is an extension of

confinement, limitations resulting in . . . restricted living or travel arrangements

during the time of parole or mandatory release supervision do not result in a

constitutional violation. . . . The purpose of parole or mandatory release

supervision is to assist an individual in an effort to re-integrate himself into society.

Therefore, legitimate state interests warrant placing some conditions on the

individual's behavior. . . . Such restrictions do not rise to the level of violating [the

individual's] rights under the First Amendment." <u>Green v. Quintana</u>, 1992 WL

477010, *1 (D. Colo. Apr. 8, 1992) (citations omitted), <u>aff'd</u>, 992 F.2d 1222 (10th

Cir. 1993) (table).

**Claim Five - Parole Contract.**

In Claim Five, plaintiff

moves the court for review and interpretation of the following writings
for declaration of rights, legal relations, and whether ambiguity exists
thereof, under U.S. Constitution 14th Amendment Equal Protection.
Supporting Facts:

1) That on February 27, 2009 the Plaintiff was forced to sign
several documents by CPO Tasha Dobbs, or be forced to
return back to prison if he did not comply, in the following ways:

   A) That, CPO Tasha Dobbs stated that she has the
   authority to send the Plaintiff back to prison.

   B) That she has the authority under the Parole Agreement
   Condition #3; (Parolee shall follow the directives of the
   Parole Officer at all times.)

   C) That the Plaintiff physically signed some of the
   documents as "TDC" meaning (under <u>T</u>hreats, <u>D</u>uress,

and Coercion.)

      D)     That other evidence will show the circumstances surrounding the drafting of the writings, the coercion and the intent of the parties at that time.

      E)     That the Plaintiff was promised under the writings and wants that promise enforced under the doctrine of promissory estoppel, that is part of the common law of Colorado.

   2)     That some of the writings was only to be used by the Department of Corrections and not by the Colorad [sic] Parole Borad [sic] nor Officer.

   3)     That the Plaintiff was forced to sign the Notice of Administration Review, by the threatened use of leal coercion, that started the imposed lable [sic] of S-4D.

   4)     That the Plaintiff cannot be compeled [sic] to sign any document, nor can release be a condition of signing such document.

   5)     That the Plaintiff cannot be compeled [sic] to sign any document concerning issues that are being challenged in a court of law without violating his right of self-incrimination while such issues are pending. (This concern the court fines of case # 03CR957.)

(Docket No. 14 at 10). Plaintiff seeks declaratory relief only on Claim Five.

Defendant does not expressly address Claim Five in her motion to dismiss. However, pursuant to 28 U.S.C. § 1915(e)(2), this court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. 1915(e)(2). This court finds that the plaintiff has not stated a constitutional claim in Claim Five. See Rodriguez v. Quarterman, 2008 WL 2166012, *4 (W.D. Tex. May 20, 2008) (claim that inmate signed a mandatory supervision certificate under duress does not raise a federal

constitutional claim); <u>Hutchinson v. Rubitschun</u>, 2007 WL 734955, *5 (W.D. Mich. Mar. 9, 2007) ("[P]laintiff alleges that he 'was induced to sign the . . . conditions of parole under duress, threat or coercion upon his release from confinement as refusal to sign the agreement would result in a revocation of the parole order.' . . . Plaintiff's complaint assumes that he had the right to parole regardless of the conditions set by the Parole Board.  This is not the case. . . .  Plaintiff has failed to state a claim that defendants' actions violated his federal constitutional rights."); <u>Ryan v. Dretke</u>, 2004 WL 609317, *2 (N.D. Tex. Mar. 22, 2004) (Petitioner claimed that signing the parole contract as a precondition to release on parole or mandatory supervision represented blackmail, coercion, duress, and prolonged incarceration.  Court found that "any complaint of coercion in this instance, even if successful, would not amount to a constitutional deprivation of a protected right.").

**Claim Six - Declaratory Relief.**

In Claim Six, plaintiff asks the court to review certain statements "for declaration of rights and legal relations of the right of Mandatory Parole under U.S. Constitution 14th Amendment Equal Protection."  (Docket No. 14 at 11).  The statements he wants the court to review in Claim Six are as follows:

> 1) That the Plaintiff on February 25, 2009 discharged his sentence to confinement, and started his statutory created right of Mandatory Parole supervision.

> 2) That the Plaintiff was not "granted the privilege of Parole", as the understanding of the traditional historic discretionary parole.  Also as defined under CRS § 17-2-100.2, Legislatures intent of Parole, effictive [sic] date, July 1, 1987.

> 3) That the Plaintiff as a mandatory parolee should have more

fundamental rights and liberty intrest [sic], than what was discribed [sic] in Morrissey as a discretionary parolee.

4) That the Plaintiff is not an inmate, nor under confinement as a mandatory parolee, untill [sic] he has been found guilty of any parole violation.  Only then will he be serving the penalty period of confinement for the parole violation and be named as an inmate.

5) That the rights and uncertainties of the rights of an Mandatory Parolee needs to be established and settled.

6) That there are several Colorado Revised Statutes that are in direct conflict with the Mandatory Parole Scheme.

7) That an [sic] Declaratory Judgment is proper to determine such rights.

(Docket No. 14 at 11).  He seeks only declaratory relief with respect to each point raised in this claim.

Defendant does not specifically address Claim Six in her motion to dismiss. Nevertheless, this court *sua sponte* recommends dismissal of this claim.  "[F]ederal courts may adjudicate only actual controversies."  Conkleton v. Zavaras, 2010 WL 936069, *2 (D. Colo. Mar. 15, 2010) (citing Disability Law Center v. Millcreek Health Center, 428 F.3d 992, 996 (10th Cir. 2005)).  "According to the Tenth Circuit, 'what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion-is the settling of some dispute which affects the behavior of the defendant toward the plaintiff."  Id.  Here, none of the statements above even mention the only defendant in this case.  Plaintiff is merely seeking an advisory opinion concerning such statements. Therefore, Claim Six should be dismissed.

### S-4D Classification.

In her motion to dismiss, the defendant asserts that assuming, *arguendo*,

that plaintiff has a protected due process right in his S-4D classification, he fails to

establish that the procedures utilized were inadequate under the circumstances.

The court notes that the plaintiff has not averred that the sole defendant here, a

parole officer, had any personal involvement in the DOC's S-4D classification

determination.  Instead, the classification was made prior to his parole by the DOC.

 "Individual liability under § 1983 must be based on personal involvement in the alleged

constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

Therefore, to the extent plaintiff alleges a due process violation when the S-4D

classification was made by the DOC, such claim should be dismissed given the

defendant's lack of personal involvement in such claim.  Furthermore, to the extent

plaintiff asserts that defendant used such classification as a basis for setting

certain parole restrictions, this court finds that the plaintiff has not stated a

constitutional claim.  See discussion above regarding parole release conditions.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendant's Motion to Dismiss (Docket No. 31) be

**granted**..

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives** *de novo* **review of the**

**recommendation by the District Judge,** <u>Thomas v. Arn</u>**, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

<u>Makin v. Colorado Dep't of Corrections</u>**, 183 F.3d 1205, 1210 (10th Cir. 1999);** <u>Talley</u>

<u>v. Hesse</u>**, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  July 29 , 2010                          s/ Michael J. Watanabe
         Denver, Colorado                      Michael J. Watanabe
                                               United States Magistrate Judge